The William J. Burns International Detective Agency, Inc., Appellant, *v.* Thomas F. Powers, Respondent.

First Department, December 29, 1916.

Practice — action for services — erroneous instruction as to value of evidence.

Where, in an action to recover for services rendered by the plaintiff, and expenses incurred as incidental thereto, the only issue related to the nature of the contract or understanding between the defendant and

plaintiff's assistant manager, and depended entirely upon the conflicting evidence of said persons, it was reversible error for the trial court to so instruct the jury as to lead them to believe that the plaintiff's witness was unbelievable.

APPEAL by the plaintiff, The William J. Burns International Detective Agency, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of. the county of New York on the 30th day of March, 1915, upon the verdict of a jury, and also from an order entered in said clerk's office on the 29th day of April, 1915, denying plaintiff's motion for a new trial made upon the minutes.

*Abraham I. Spiro,* for the appellant.

*Thomas F. Powers,* for the respondent.

PAGE, J.:

The action was brought to recover the sum of $203.20 for services rendered by the plaintiff and expenses incurred as incidental thereto. It appeared that on January 2, 1913, the defendant called at the New York office of the plaintiff and interviewed Mr. Dorsey, then plaintiff's assistant manager, for the purpose of employing detectives to make investigations with respect to gambling houses in the city of Albany. The defendant was a resident of Troy, N. Y., and was unknown to Mr. Dorsey, the plaintiff's manager. It appears that some discussion was had between them as to the price to be charged by the plaintiff for such services, and a retainer of $500 was agreed upon. The issue in the case related to the exact nature of the contract or understanding entered into between the defendant and Dorsey. Dorsey testified that defendant requested him to send two, three or four men immediately to Albany to make the investigation and agreed to send the retainer immediately upon his arrival at home, whereupon Dorsey, relying upon his promise and believing that he would pay for the services, sent two men to Albany that night. The defendant's testimony was that Dorsey demanded of him $1,000 in advance as a retainer, which defendant refused to pay, whereupon it was agreed that the sum of $500 should be

First Department, December, 1916.          [Vol. 176.

paid and that plaintiff was not to start operations until he received the $500. It appears that two detectives employed by the plaintiff were sent to Albany on the night of January second and proceeded to investigate the places designated by the defendant in his interview with Dorsey. It was shown that they remained there until they were summoned to return to New York by wire from the plaintiff on January 8, 1913. It further appears, however, that on the fourth of January, shortly after the defendant's return to Troy, he wrote a letter to Dorsey addressing it to the office of the plaintiff, directing him to defer proceedings in the matter, for the reason that he had found upon his arrival at home circumstances which would render it impossible to secure the evidence at this time. Evidence was given tending to show that this letter, though received at the plaintiff's office on January sixth, was not opened until January eighth, for the reason that Dorsey was out of town and no one in the office was instructed to open his mail. On the eighth of January the detectives were directed by the plaintiff to desist from their operations, and a bill was sent to the defendant for their expenses and $10 a day for the services of each detective during the time when they worked on the investigation. The case was submitted to the jury to determine the question of fact as to the nature of the contract entered into between Dorsey and the defendant. There was a sharp conflict in the testimony, and the whole case depended upon whether the jury should believe Dorsey or believe the defendant. If the defendant's story were true, that he did not instruct Dorsey to go ahead with the case, but left the matter in abeyance to be taken up upon further instructions and upon the receipt of a check for $500, then clearly the plaintiff could not recover. If, on the other hand, as testified to by Dorsey, the defendant requested him to proceed at once with the work and agreed to send the check later, then the plaintiff was entitled to recover the value of the services performed plus expenses incurred. While I do not think the verdict of the jury in favor of the defendant is necessarily against the weight of evidence, I am of the opinion that the charge of the trial justice necessitates a reversal of the judgment. After stating the issues to the jury, the learned trial justice proceeded to analyze the

evidence as follows: "What are the probabilities of the stories as given to us by the respective witnesses ?   Now apply that principle to the testimony in this case.   Here was a perfect stranger, conceded by Dorsey to be such, Dorsey never having seen him before, who comes to the office of the Burns Detective Agency and makes this alleged contract, Dorsey telling you that it is always customary to get a retainer, and a most natural thing to ask for; and yet, without the retainer being paid, with no knowledge of the financial standing of the defendant an expense is immediately incurred; a man is sent to Albany that night, followed by another the next day.   Ask yourselves, is it reasonable under the circumstances that a contract was made as claimed by the plaintiff ?   Is it not more reasonable to believe the story as given to you by the defendant ?"

And again in another portion of his charge he stated: "Even assuming that the contract was made as claimed by the plaintiff, upon the receipt of this letter it was the duty of the plaintiff-corporation to immediately recall its investigators in order to mitigate the damages   *   *   *.   Did they do it ? Nothing was done until the 8th of January, and expense of ten dollars a day for each of those men, together with the expense incident to their work in the City of Albany, being permitted to run in the meantime."

This latter portion of the charge did not take into consideration the fact that plaintiff claimed that the letter addressed to Dorsey was not opened until the eighth of January because of Dorsey's absence from the city, which explained plaintiff's failure to recall its men until that date.   Exception was taken to the first portion of the charge above quoted by the plaintiff's counsel, who made the following request to charge: " I ask your Honor to charge that the jury has a right to decide the facts without any intimation from the Court," to which the court replied: " I decline to charge further than I have upon that subject."   In the main charge, however, the trial justice had failed to state to the jury in any manner that they alone were to determine the issue of fact, and were not to take his statement of facts as an intimation of his opinion as to their proper determination.

Had the learned court been addressing the jury as counsel for the defendant more effective language could not have been used for the purpose of inducing a verdict in the defendant's favor. An examination of the rest of the charge shows nothing to mitigate or soften the evil effect of this language which was practically an instruction to the jury that the plaintiff's witness Dorsey was unbelievable.

For this error I think the judgment must be reversed and a new trial granted, with costs to appellant to abide the event.

Clarke, P. J., Scott, Dowling and Smith, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.